THE HONORABLE MARSHA J. PECHMAN

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
IN SEATTLE**

NORTHWEST BORING COMPANY,
INC., a Washington corporation,

               Plaintiff,

     v.

ADMIRAL INSURANCE COMPANY, a
foreign insurance company,

               Defendant.

No. 2:24-cv-01310-MJP

PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**NOTE ON MOTION CALENDAR:
AUGUST 19, 2025**

## I.    **INTRODUCTION AND RELIEF REQUESTED**

This is an insurance coverage dispute.  Plaintiff Northwest Boring ("NWB") was a micro-tunneling subcontractor on the Ship Canal Water Quality project in Seattle ("the Project").  Defendant Admiral was NWB's liability insurer.

In 2022, the general contractor on the Project, Lane Construction, asserted a claim against NWB for damage caused by a sinkhole that had opened up near where NWB had been working.  NWB forwarded the sinkhole claim to Admiral, which told NWB it would

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1

**Case No. 2:24-cv-01310-MJP**

investigate. Although Admiral sent someone to look at the sinkhole, Admiral never acknowledged (or disclaimed) coverage for the claim. Lane eventually filed a counterclaim in its lawsuit with NWB (NWB had earlier sued Lane over unpaid bills) that alleged NWB was liable for the cost of repairing the sinkhole. Although Admiral attended a mediation that addressed Lane's counterclaim, Admiral never agreed to defend NWB against Lane's counterclaim and never paid for any of the defense costs that NWB incurred in defending itself against Lane's counterclaim. NWB and Lane eventually settled all of their claims against one another. NWB then filed this lawsuit against Admiral for (1) the unpaid defense costs that NWB incurred in defending against Lane's counterclaim; and (2) indemnification for the portion of NWB's affirmative claim against Lane that NWB was forced to give up to resolve Lane's counterclaim against NWB.

Under the Washington law that governs this diversity action, Admiral had a duty to defend NWB from Lane's counterclaim because the allegations of property damage (*i.e.*, the sinkhole) were "conceivably" covered. *See* Truck Ins. Exchange v. Vanport Homes, Inc., 58 P.3d 276, 281-82 (Wash. 2002) ("The duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."). Admiral unreasonably breached that duty by failing without reason to defend NWB from Lane's counterclaim and by failing to reimburse NWB's defense costs. Admiral should therefore be estopped from denying coverage for that liability. *See, e.g.*, Kirk v. Mt. Airy Ins. Co., 951 P.2d 1124, 1128 (Wash. 1997) ("When the insurer breaches the duty to defend in bad faith, the insurer should be held liable not only in contract for the cost of the defense, but also should be estopped from asserting the claim is outside the scope of the contract and, accordingly, that there is no coverage."). Accordingly, NWB

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

**Case No. 2:24-cv-01310-MJP**

HARPER | HAYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

respectfully requests an order that Admiral unreasonably breached its duty to defend NWB from Lane's counterclaim, and that Admiral is therefore estopped from denying coverage for Lane's counterclaim.

## II.     FACTS

Plaintiff NWB was a micro-tunneling subcontractor on the Ship Canal Water Quality project in Seattle ("the Project"). *See Declaration of Dennis Molvik ¶ 3.* Lane Construction Company was the Project's general contractor. *Id.* Defendant Admiral was NWB's liability insurer. *See id., Ex. A.* The Admiral policy ("the Policy") states that it covers NWB's liability because of covered "property damage" (defined as "physical injury to tangible property") caused by "an occurrence" (defined as "an accident") and occurring during the Policy's June 1, 2022 to June 1, 2023 policy period. *See id., Ex. A* at 8, 9, and 22-23 of 78.[1]

On December 8, 2022, NWB received notice of a sinkhole in the vicinity of its micro-tunneling operations. *See Molvik Decl., Ex. B.* The following day, Lane notified NWB that if NWB was the cause of the sinkhole, then Lane would hold NWB responsible for all resulting "cost and schedule impact[s]." *Molvik Decl., Ex. C.* On December 19, 2022, NWB gave notice (through its insurance broker) of the sinkhole to Admiral. *See Declaration of Todd C. Hayes, Ex. A.* On December 20, 2022, Admiral acknowledged "receipt of the claim" and explained that it was "investigating th[e] loss" subject to a reservation of its right to deny coverage if it determined "no coverage [was] available for the claim":

> Admiral Insurance Company acknowledges receipt of the claim and is investigating this loss. Please be advised that Admiral is investigating this loss

---

[1] Citations are to the consecutively-paginated declarations of Dennis Molvik and Todd Hayes. For example, the second page of **Exhibit A** to the Molvik Declaration would be cited as "*Molvik Decl.* at 5" (*i.e.*, page five of the 78-page declaration).

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3

**Case No. 2:24-cv-01310-MJP**

HARPER | HAYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

pursuant to a complete reservation of rights to decline coverage if Admiral determines during the investigation that there is no coverage available for the claim.

*Hayes Decl., Ex. B.*

Admiral assigned the claim to independent adjuster Crockett Blanchard, who traveled to Seattle on December 28 to inspect the sinkhole and to meet with representatives of NWB. *See Molvik Decl. ¶ 7.* Admiral never told NWB what Mr. Blanchard determined as a result of his investigation, or whether Admiral believed the damage from the sinkhole was covered under the Policy. *Molvik Decl.¶ 8.* Admiral did send a bill to NWB for the cost of Mr. Blanchard's site visit (on grounds that the cost was within the Policy's deductible, and therefore NWB's responsibility). *See Molvik Decl., Ex. D.* In January 2023, without NWB's knowledge, Admiral "closed its file" on the claim without further contacting NWB or NWB's insurance broker, and without issuing a decision on coverage for the sinkhole. *Hayes Decl., Ex. C* at 18 of 32.

In March 2023, Lane issued "Deductive Change Order 4" to NWB, purporting to charge NWB for costs that Lane had incurred in repairing damage from the sinkhole. *See Molvik Decl., Ex. E* (referring to "CO-04, which encompasses the additional costs incurred by Lane due to the sinkhole incident"). In September 2023, Lane filed a counterclaim in a lawsuit that NWB had earlier filed against Lane ("the Underlying Lawsuit"), alleging NWB was liable to Lane for, among other things, the costs represented in Deductive Change Order 4. *See Molvik Decl., Ex. F* at 61 of 78, *¶¶ 23-29* (alleging liability for "deductive Change Orders 2-6").

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

**Case No. 2:24-cv-01310-MJP**

**H**ARPER | **H**AYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

In April 2024, as Lane and NWB were preparing to mediate their claims against one another in the Underlying Lawsuit, NWB invited Admiral to the mediation and asked for Admiral's position on whether the sinkhole claim was covered under the Policy:

> I am following up on our call earlier this week regarding the sinkhole event that Lane Construction alleges was caused by NW Boring's work at the Ship Canal Water Quality Project in Seattle. NW Boring tendered a claim to Admiral Insurance relating to these allegations 16 months ago, and yet Admiral has yet to take a coverage position. Please advise as to when we can expect that.
>
> Relatedly, NW Boring and Lane are scheduled to mediate the claims between them—including the sinkhole claim—on April 23. We ask that Admiral attend that mediation.

*Molvik Decl., Ex. G.* Admiral did attend that mediation. *Molvik Decl. ¶ 13.* But Admiral did not respond to the request for a coverage position and, as of the date this lawsuit was filed, had still not taken a position on whether the sinkhole claim was covered, or whether it had a duty to defend or indemnify NWB from Lane's counterclaim in the Underlying Lawsuit. *Molvik Decl. ¶ 13; see also Dkt. 19 ¶ 20 and Dkt. 21 ¶ 20* (admitting Admiral had not "acknowledged coverage for the December 2022 sinkhole claim" or "agreed to defend NWB from Lane's counterclaim in the Underlying Lawsuit").

On October 8, 2024, NWB and Lane settled their claims against one another in the Underlying Lawsuit. *Molvik Decl. ¶ 14.* As of that date, NWB had incurred over $300,000 in unreimbursed[2] legal and expert witness fees defending against Lane's counterclaim. *Id.* Admiral has never paid any of those defense costs. *Id.*

---

[2]    Another liability insurer for NWB had paid some of NWB's defense costs in the Underlying Lawsuit. *Molvik Decl. ¶ 15.*

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5

**Case No. 2:24-cv-01310-MJP**

HARPER | HAYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

### III.   ISSUE PRESENTED

The issue presented is whether Admiral unreasonably breached its duty to defend, estopping it from denying coverage for Lane's counterclaim in the Underlying Lawsuit.

### IV.   EVIDENCE RELIED UPON

This motion is based upon the pleadings and other papers previously filed in this lawsuit, together with the declarations of Dennis Molvik and Todd C. Hayes.

### V.   ARGUMENT

**A.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FRCP 56(c).  While evidence must be construed in favor of the non-movant, summary judgment is nevertheless appropriate if no rational fact finder could decide for the nonmoving party.  *See* Maynard v. Ferno-Washington, Inc., 22 F. Supp. 2d 1171, 1180 (E.D. Wash. 1998).  The nonmoving party cannot rest upon the mere allegations or denials of his or her pleadings, but must instead produce specific facts—by affidavit or other evidentiary materials allowed by Rule 56(e)—showing a genuine issue for trial.  *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**B.   ADMIRAL UNREASONABLY BREACHED ITS DUTY TO DEFEND, ESTOPPING IT FROM DENYING COVERAGE**

Under Washington law, an insurer's duty to defend is triggered if its insurance policy "*conceivably covers*" the allegations against the insured.  Am. Best Food, Inc. v. Alea London, Ltd., 229 P.3d 693, 696 (Wash. 2010); *see also* Truck, 58 P.3d at 281-82 ("The duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6

**Case No. 2:24-cv-01310-MJP**

**H**ARPER | **H**AYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

proven, impose liability upon the insured within the policy's coverage. Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend."). Thus, "if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." Am. Best Food, 229 P.3d at 700.

The duty to defend is triggered by the filing of the lawsuit against the insured that alleges potentially covered claims (in this case, the filing of Lane's counterclaim). *See, e.g.*, Griffin v. Allstate Ins. Co., 29 P.3d 777, 780-81 (Wash. Ct. App. 2001) ("The triggering event is the filing of a complaint alleging covered claims."). If the insurer fails to timely respond to the insured's tender—even if the insurer does not expressly deny a defense—then the insurer has breached its duty to defend. *See, e.g.*, Truck, 58 P.3d at 282 ("Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination."); Rushforth Constr. Co. v. Wesco Ins. Co., No. C17-1063-JCC, 2018 WL 1610222, at *2 (W.D. Wash. Apr. 3, 2018) (rejecting insurer's claim it did not breach duty to defend—on grounds it "never denied [insured's] tender and eventually offered to defend"—based on principle that insurer breaches its duty to defend "by failing to respond to an insured's tender in a reasonably timely manner").[3]

---

[3] *See also* Newmont USA Ltd. v. Am. Home Assur. Co., 676 F. Supp. 2d 1146, 1161 (E.D. Wash. 2009) (finding breach of duty to defend where insurer "never responded in writing whether it was either agreeing to or declining to defend the Plaintiffs"); Taladay v. Metro. Grp. Prop. & Cas. Ins. Co., No. C14-1290-JPD, 2016 WL 3681469, at *20 (W.D. Wash. July 6, 2016) ("Although MetLife never explicitly denied plaintiffs' requests for coverage, MetLife's unreasonable delay in payment . . . violated IFCA."); Cedar Grove Composting, Inc. v. Ironshore Specialty Ins. Co., No. C14-1443RAJ, 2015 WL 3473465, at *6 (W.D. Wash. June 2, 2015) ("A refusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only temporary."); Heather v. Allstate Prop. & Cas. Ins. Co., No. C18-1179-JCC, 2020 WL 30340, at *3 (W.D. Wash. Jan. 2, 2020) ("A failure to promptly respond to a demand for coverage can constitute an unreasonable denial of benefits, even if the insurer eventually offers coverage.").

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7

**Case No. 2:24-cv-01310-MJP**

HARPER | HAYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

The remedy for an insurer's bad faith failure to defend is "coverage by estoppel"—the insurer is liable for whatever liability the insured incurs in the lawsuit that the insurer failed to defend, regardless of whether the liability was covered under the policy and regardless of the policy's limits. *See, e.g.*, Kirk, 951 P.2d at 1127 ("Where an insurer acts in bad faith in failing to defend, [Safeco Ins. Co. of Am. v. Butler, 823 P.2d 499 (Wash. 1992)] and other Washington cases recognize that coverage by estoppel is one appropriate remedy."); Aecon Bldgs., Inc. v. Zurich N. Am., 572 F. Supp. 2d 1227, 1234 (W.D. Wash. 2008) ("If an insured prevails on a bad faith claim, the insurer is estopped from denying coverage. . . . This is true even where coverage never in fact existed."); Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc., 199 P.3d 376, 383 n.4 (Wash. 2008) ("[C]overage by estoppel will require the insurer to pay all damages regardless of policy limits."). A failure to defend is in bad faith if it is "unreasonable, frivolous, or unfounded." Am. Best Food, 229 P.3d at 700. "This test is in the disjunctive." Id.

Here, Admiral had a duty to defend NWB from Lane's counterclaim because the counterclaim alleged that NWB was liable because of "property damage"—*i.e.*, the sinkhole—and this property damage was "conceivably" covered under Admiral's policy because it occurred during Admiral's policy period and was "conceivably" not excluded (because, for example, the sinkhole "conceivably" occurred away from where NWB was working). *See, e.g., Molvik Decl., Ex. A* at 14 of 78 ("We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies"). For example, paragraphs 23 through 29 of Lane's counterclaim allege that Lane "issued deductive Change Orders 2-6" to NWB for "additional costs Lane . . . incurred"; that "NWB . . . caused property damage" that "required extensive repairs"; and that NWB was

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8

Case No. 2:24-cv-01310-MJP

HARPER | HAYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

liable to Lane for the dollar values set forth in the change orders (including deductive Change Order 4). *Molvik Decl., Ex. F* at 71-72 of 78. It follows that Admiral breached its duty to defend NWB from Lane's counterclaim by not paying for any of NWB's defense costs.

Admiral's breach was unreasonable—and should therefore estop Admiral from denying coverage for Lane's counterclaim—for at least two reasons.

First, the breach was unreasonable because it resulted from Admiral's failure to conduct a reasonable investigation. "The implied covenant of good faith and fair dealing in the policy should necessarily require the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage." Coventry Assocs. v. Am. States Ins. Co., 961 P.2d 933, 938 (Wash. 1998). No reasonable juror could conclude that Admiral's investigation—which consisted of a single site visit—was reasonable: Admiral made no effort to contact the sinkhole claimant (Lane)[4]; never followed up with NWB; and "closed its file" without telling NWB. Had Admiral properly investigated NWB's claim, Admiral would have learned that Lane eventually issued a deductive change order to NWB based on the sinkhole, and that Lane eventually filed a counterclaim against NWB alleging liability because of the sinkhole. Even after Admiral attended a mediation of the Underlying Lawsuit in April 2024, Admiral still did nothing to investigate the claim or to reach a coverage determination. Estoppel is therefore warranted. *See, e.g.*, Aecon Bldgs., 572 F.Supp.2d at 1238 (granting summary judgment on grounds that insurers "acted in bad faith by failing to reasonably investigate [insured's] claims").

---

[4]    *See Hayes Declaration, Ex. D* at 30 of 32.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9

**Case No. 2:24-cv-01310-MJP**

HARPER | HAYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010

Second, the breach was unreasonable because it was not based on *any* reason. It was not as if Admiral failed to defend because it thought the Policy contained a "sinkhole" exclusion. Admiral simply failed to defend NWB—for no reason. That failure continued even after Admiral attended the April 2024 mediation (and notwithstanding NWB's renewed request for a coverage position). *Molvik Decl., Ex. G*; *Molvik Decl.* ¶¶ 13-14. If an insurer had no reason for failing to defend, then the insurer necessarily failed to defend "unreasonably"—and therefore in bad faith.

### VI.    CONCLUSION

Admiral unreasonably breached its duty to defend NWB from Lane's counterclaim estopping it from denying coverage for that counterclaim. NWB respectfully requests an order to that effect.

DATED this 22nd day of July 2025.

HARPER | HAYES PLLC

By: s/ *Todd C. Hayes*
Todd C. Hayes, WSBA No. 26361
By: s/ *Thomas M. Williams*
Thomas M. Williams, WSBA No. 47654
1200 Fifth Avenue, Suite 1208
Seattle, WA 98101
(206) 340-8010
todd@harperhayes.com
twilliams@harperhayes.com
Attorneys for Plaintiff Northwest Boring
Company, Inc.

I certify that this memorandum contains 2,690 words, in compliance with the Local Civil Rules.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 10

Case No. 2:24-cv-01310-MJP

HARPER | HAYES PLLC
1200 Fifth Avenue, Suite 1208
Seattle, Washington 98101
Telephone: 206-340-8010