THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST BORING COMPANY, INC.,
a Washington corporation,

        Plaintiff,

        v.

ADMIRAL INSURANCE COMPANY, a
foreign insurance company,

        Defendant.

No.: 2:24-cv-01310-MJP

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

NOTED ON THE MOTION CALENDAR:
September 8, 2025

ORAL ARGUMENT REQUESTED

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Admiral Insurance Company ("Admiral") respectfully requests that the Court grant summary judgment and dismiss Plaintiff's claims against Admiral with prejudice.

## I. **INTRODUCTION**

In this insurance coverage and bad faith lawsuit, Plaintiff Northwest Boring Company ("NWB" or "Plaintiff") is seeking to prove that Admiral breached its duty to defend NWB in a lawsuit it never asked Admiral to defend. Admiral provided commercial general liability coverage to NWB for the policy period from June 1, 2022 through June 1, 2023. Plaintiff had a claim during that period that could have been resolved for approximately $40,000. But during Admiral's inspection of the loss, Admiral was led to believe there were no damages

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 1

being claimed by any party. And NWB failed to provide copies of any of the numerous subsequent demands to Admiral as the policy clearly and unambiguously requires. As a result, Admiral had no opportunity to settle the claim.

Plaintiff's failure to tender bars its claims under multiple principles of Washington law. First, as an element of its breach of contract claims, Plaintiff must prove Admiral had a legal obligation to provide a defense. Because "breach of the duty to defend cannot occur before tender," *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 191 P.3d 866 (2008), and Plaintiff did not tender, its breach of contract claim fails as a matter of law. Second, the Admiral policy expressly required Plaintiff to "immediately"—that is, without request—provide copies of claims or suits against Plaintiff, and Plaintiff concedes it breached this condition. Because that breach prevented Admiral from evaluating coverage and settling the claims, Admiral suffered actual and substantial prejudice as a matter of law. And lastly, since it was not unreasonable for Admiral to fail to defend claims that were never tendered to it, Plaintiff's extra-contractual claims fail as a matter of law as well.

For these reasons, each of Plaintiff's claims against Admiral should be dismissed with prejudice.

## II.  FACTS

**A.**    **The September 2021 Catastrophic Event**

NWB was hired by Lane Construction Company to construct a 600-feet "micro tunnel" underneath the Fremont Cut of the Lake Washington Ship Canal as part of the larger Ship Canal Water Quality Project in Seattle. (Declaration of Jared F. Kiess ("Kiess Decl"), Ex. A). On September 2, 2021, the project suffered a "catastrophic failure" when a piece of concrete on a pipe assembly ruptured, causing water to enter the tunnel and resulting in significant damage to Northwest Boring's equipment. (Kiess Decl., Ex. B at 8). Repairs associated with the leak were expensive and delayed Northwest Boring's micro-tunnelling activities on the project for approximately 14 months, from September of 2021 to November

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 2

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

of 2022.  (Kiess Decl., Ex. B at 9-10).

Plaintiff sought insurance coverage for the losses from a variety of sources.  Plaintiff made a claim under a builder's risk policy issued by Certain Underwriters at Lloyd's, London.  (Kiess Decl., Ex. C).  When the builder's risk insurers denied that claim, Plaintiff retained counsel, Richard Beal and Robert Marconi at Ashbaugh Beal LLP ("Ashbaugh Beal") to pursue recovery in litigation.  (Kiess Decl., Ex. C).  On April 11, 2022, Plaintiff filed suit in a case captioned Northwest Boring Company, Inc. v. Certain Underwriter-Insurers of Lloyd's Syndicate 1919, et al., Washington State Superior Court, King County, Case No. 22-2-05188-4 (the "Underlying Action").  (Kiess Decl., Ex. C).  In addition to the builder's risk insurers, Plaintiff also named Thompson Pipe Group and TPG Pressure, Inc. (together "Thompson"), manufacturer of the concrete pipe assembly at issue.  (Kiess Decl., Ex. C).

Thompson filed a counterclaim against Plaintiff, alleging that the damage to the pipe occurred, not in the manufacturing of the pipe, but in NWB's improper handling or installation of the pipe after delivery.  (Kiess Decl., Ex. D).  At the time of the event, NWB was insured by American Southern Home, a MunichRe company.  (Kiess Decl., Ex. B at 14-15, 87).  NWB did *not* submit a claim to Admiral for any damages arising from the September 2021 catastrophic event, because Admiral had not yet issued a policy to NWB.

**B.**     **The Admiral Policy**

In June of 2022, Admiral issued commercial general liability policy no. CA00045568-01 (the "Policy") to NWB for the policy period from June 1, 2022 through June 1, 2023.  (Cutuli Decl., Ex. A).  The Policy affords coverage for, in relevant part, amounts NWB "becomes legally obligated to pay as damages because of … 'property damage'" that occurs "during the policy period."  (Cutuli Decl., Ex. A at 10[1]).

---

[1] Page numbers refer to the bates numbers beginning with "ADMIRAL_POLICY".

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 3

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

The Admiral Policy also contains a duty to defend "suit[s] seeking" such damages:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….
>     **b.** This insurance applies to "bodily injury" or "property damage" only if:
>
>     …
> **(2)** The "bodily injury" or "property damage" occurs during the policy period[.]

(Cutuli Decl., Ex. A at 10).  The Policy defines "suit" as, in relevant part, a "civil proceeding" in which damages because of "property damage" are sought:

> **18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>     **a**. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>     **b**. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(Cutuli Decl., Ex. A at 24).

Finally, as a condition precedent to coverage, Policy expressly requires the insured to "immediately record the specifics" of any "claim *or* 'suit,'" to notify Admiral "as soon as practicable," and to "immediately send [Admiral] copies of *any* demands, notices, summonses or legal papers received in connection with the claim or 'suit'":

MOTION FOR SUMMARY JUDGMENT   PAGE 4
NO.: 2:24-CV-01310-MJP

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**2.** Duties In The Event Of Occurrence, Offense, Claim or Suit

   **b**. If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

      **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      **(2)**    Authorize us to obtain records and other information; [and]

      **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"[.]

(Cutuli Decl., Ex. A at 20).

**C.  The December 2022 Sinkhole**

By November of 2022, NWB's drilling activities at the Project had resumed. (Kiess Decl., Ex. B at 10). On December 8, 2022, NWB personnel observed that a sinkhole had developed just above the location where it was drilling, about 10-15 feet from the Burke-Gilman Trail, a bike path owned by the City of Seattle on the north side of the ship canal. (Kiess Decl., Ex. B at 10-13). The City issued a stop work order effective 1:30 p.m. the following day, Friday December 9, 2022. (Kiess Decl., Ex. B at 21; Kiess Decl., Ex. E). Lane filled the sinkhole, and by December 15, 2022 the City had rescinded the stop work order and drilling activities resumed. (Kiess Decl., Ex. B at 27; Kiess Decl., Ex. F).

In a letter dated December 9, 2022, Lane informed NWB that it would "be held responsible for all additional cost and schedule impact caused by this event *if* it is determined to be NWB's fault." (Kiess Decl., Ex. B at 18-21; Kiess Decl., Ex. G). NWB did not inform Admiral of this notice or provide Admiral with a copy. (Kiess Decl., Ex. B at 20). NWB did, however, commission a report from engineer Chris D. Breeds at SubTerra, Inc. (Kiess

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 5

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Decl., Ex. B at 24-25; Kiess Decl., Ex. H).  In that report, unbeknownst to Admiral, Breeds expressed the conclusion that the sinkhole was not the result of NWB's drilling activities but rather, "the result of re-activation of a prior sinkhole discovered in June, 2022."  (Kiess Decl., Ex. H).

On December 19, 2022, NWB's insurance broker, David O'Laughlin informed Admiral of the sinkhole.  (Declaration of Ruth Cutuli "Cutuli Decl" Ex B).  Admiral promptly acknowledged the notice and assigned it a claim number and adjuster, Karen Morgan-Bilocur.  (Cutuli Decl., Ex. C).  Ms. Bilocur hired McLarens, Inc. to assist in its claim investigation.  (Cutuli Decl., Ex. C).  The following day, December 20, 2022, McLarens adjuster Crockett Blanchard, spoke with NWB's president, Don Gonzales, to schedule a site visit, which ultimately occurred on December 28, 2022.  (Cutuli Decl., Ex. D).

According to Mr. Blanchard's written account of the conversations in a report to Admiral dated January 6, 2023, Gonzales and project foreman John Short confirmed to him on December 28 that the sinkhole had been filled, that, despite the City's stop work order, "progress has continued with the tunnel," and that no party was claiming damages relating to the sinkhole:

> **INVESTIGATION/DEVELOPMENTS**
> Mr. Gonzales advised that work has not stopped working because of the sinkhole and progress has continued with the tunnel. Mr. Gonzales does not believe that the sinkhole has created any issues. The sinkhole has been filled with CDF, which stands for Controlled Density Fill, which is akin to a very soft cement. The insured is not aware of any geotechnical engineering firm being retained to investigate the sinkhole or its surroundings. The sinkhole is approximately 10-15 feet from the Burke Gilman Trail, which is a recreational trail open to the public. We met with the insured foreman John Short for our site inspection on December 28, 2022. Mr. Short showed us around the property and led us to the sinkhole area. We took photographs of the site area and the sinkhole. The sink hole is approximately 10 feet in diameter. After the sinkhole was filled with CDF sand was put on top of the sinkhole so that the sand could be monitored. Mr. Short does not believe that the

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 6

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

sink hole has grown or shifted at this time.
Mr. Short advised that the only concern with the sinkhole was its proximity to the Burke Gilman Trail. In the area of the sinkhole pot holing was performed on each side of the Burke Gilman Trail. The vertical testing holes went 14 feet in depth and the ground was very solid on both sides of the trail.
**DAMAGES**
No damages reported at this time.
…
**TENDER/CONTRIBUTION**
None at this time.  There are currently no damages claimed by any party. ….

(Cutuli Decl., Ex E).  NWB's 30(b)(6) designee, Dennis Molvik, also acknowledged that, as responsibility for the sinkhole had yet to be determined, no claim was being made for damages relating to the sinkhole as of the December 28, 2022 inspection.  (Kiess Decl., Ex. B at 31-32).

**D.**     **NWB's Failure to Tender**

    **1.**     **Pre-Suit Demands**

Shortly thereafter, however, Plaintiff did, in fact, learn that Lane was indeed making a claim for damages associated with the sinkhole.  On January 27, 2023, the City issued a letter rejecting Mr. Breeds conclusion and determined that the cause of the sinkhole "was indeed" NWB's drilling activities and that NWB's equipment "should have been proactively operated" at different pressure levels.  (Kiess Decl., Ex. B at  49-52; Kiess Decl., Ex. J).  Shortly thereafter, on February 6, Lane informed Plaintiff that it was seeking at least $24,738 in costs related to filling the sinkhole.  (Kiess Decl., Exs. K & L).  Again, NWB did not inform Admiral of this demand and did not forward a copy to Admiral or McLarens.  (Kiess Decl., Ex. B at 52-57).

On March 2, 2023, Lane issued Change Order No. 4, which indicated that Lane was withholding a total of $38,658.15 from payments it would otherwise owe NWB under the subcontract due to costs related to filling the sinkhole.  (Kiess Decl., Ex. M).  Once again, NWB did not inform Admiral of this or provide Admiral or McLarens with a copy.  (Kiess

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 7

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Decl., Ex. B at 56-57).

NWB thereafter engaged in a lengthy series of communications with Lane regarding whether it would withdraw any disputes related to the sinkhole and the stop work order. (*See* Kiess Decl, Exs. N through Q). Lane argued that NWB was obligated to formally withdraw any dispute as to its responsibility for the sinkhole in order to receive a certain "incentive" payment to which it would have been entitled under the subcontract. (Kiess Decl., Ex. N). NWB disagreed with Lane's interpretation of the subcontract, explaining that it was, in fact, withdrawing any dispute as to liability for the sinkhole but merely reserving its right to contest Lane's $38,658.15 in charges. (Kiess Decl., Ex. O). These communications were extensive and extended throughout most of 2023, into October of that year. (Kiess Decl., Ex. P). Yet again, NWB did not inform Admiral of the change order or provide Admiral or McLarens with copies of any of Lane's demands. (Kiess Decl., Ex. B at 62-70; Cutuli Decl.).

**2.      The Counterclaim**

By this time, NWB's attorneys at Ashbaugh Beal had dismissed the claims against the builder's risk insurers and filed a Third Amended Complaint naming Lane as an additional defendant. (Kiess Decl., Ex. Q). In the Third Amended Complaint, NWB alleged that Lane had wrongfully withheld payments under the subcontract for NWB's work on the project in the amount of $3.1 million. (Kiess Decl., Ex. Q).

On September 7, 2023, Lane filed an Answer to the Third Amended Complaint and Counterclaim (the "Counterclaim"). (Kiess Decl., Ex. A). In the Counterclaim, Lane alleged that the September 2, 2021 leak caused a significant delay to the project, causing Lane to incur substantial costs. (Kiess Decl., Ex. A). Although the Counterclaim does not mention the December 2022 sinkhole or any delay associated with it, it does, inferentially, reference Change Order 4, stating in Paragraph 23 that:

> Lane has issued deductive Change Orders *2-6* to NWB totaling

$4,019,535.080 for additional costs Lane has incurred due to NWB and TPG's failures to perform.

(Kiess Decl., Ex. A at 16 (emphasis added)). As noted above, Change Order 4 sought $38,658.15 in costs relating to filling the sinkhole. (Kiess Decl., Ex. M).

NWB made a claim to its liability carrier for the 2020-21 policy period, American Southern Home. (Kiess Decl., Ex. B at 70-76). Plaintiff also sought defense and indemnity coverage from Ironshore, Thompson's liability carrier, as an additional insured. (Kiess Decl., Ex. B at 70-76). American Southern Home and Ironshore retained Brett Hill of Ahlers, Cressman & Sleight to defend NWB against the Counterclaim. (Kiess Decl., Ex. B at 70-76). Once again, NWB did not inform Admiral or McLarens of the Counterclaim or provide them with a copy. (Kiess Decl., Ex. B at 69-70).

**E.      Admiral Does Everything Requested by NWB**

On March 26, 2024, Lane issued a letter to NWB indicating that it had encountered another sinkhole "in the same area as [the] prior one" and informed NWB of additional work required by the City to verify ground stability in the area. (Cutuli Decl., Ex. F). NWB forwarded this letter to Admiral, but still did not provide a copy of the Counterclaim or any other information to indicate the matter was in litigation. (Cutuli Decl., Ex. G). The proposed work consisted of certain test drillings. (Cutuli Decl., Ex. H). McLarens requested that Lane keep Admiral informed as to when the inspection would occur. (Cutuli Decl., Ex. Cutuli Decl., Ex H).

Finally, in April of 2024, NWB's vice president Dennis Molvik wrote an e-mail to Mr. Blanchard in which he asked Admiral to attend a mediation scheduled for April 23, 2024. (Kiess Decl., Ex. R). NWB's defense counsel, Brett Hill, sent a similar e-mail to McLarens and Admiral. (Cutuli Decl., Ex. I). Although Mr. Molvik indicated that the purpose of the mediation was to mediate "the claims between" NWB and Lane, neither e-mail contained any information to suggest that these "claims" were in litigation. (*See* Kiess

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 9

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Decl., Ex. R; Cutuli Decl., Ex. I). No court or case number was provided. (*See* Kiess Decl., Ex. R; Cutuli Decl., Ex. I). Nor were any pleadings attached. (*See* Kiess Decl., Ex. R; Cutuli Decl., Ex. I).

Both Mr. Blanchard and Admiral adjuster Ruth Cutuli attended the mediation on Admiral's behalf on April 23, 2024. (Cutuli Decl.; Kiess Decl., Ex. B at 82). During the mediation, Mr. Blanchard sent the following e-mail to Mr. Molvik:

> Hello Dennis,
> At your earliest convenience, please provide a copy of the contract agreement that pertains to Lane Construction in regard to this matter. Along with *any other documents or information* related to the Fremont, WA project.

(Kiess Decl., Ex. S) (emphasis added). Later that day, Mr. Blanchard sent a similar request to NWB's defense counsel, in follow-up to a phone conversation:

> Hello Brett,
> Thank you for the conversation of today. Please update myself and Ruth on *any information and knowledge* in regard to our representation *as it may pertain to the claim*.
> Thank you Brett.

(Cutuli Decl., Ex. J) (emphasis added). Still, NWB provided no information to Admiral that would indicate the claims were in litigation and did not provide copies of the Counterclaim to Admiral or McLarens. (Cutuli Decl., Ex. J). The dispute did not resolve at mediation. (Kiess Decl., Ex. B at 92). And Admiral was ultimately excused without receiving any requests for authority or settlement demands. (Cutuli Decl.).

**F.    The Bad Faith Lawsuit**

On August 21, 2024, Plaintiff filed the instant bad faith action against Admiral and, simultaneously, gave notice of its intent to pursue claims under the Insurance Fair Conduct Act ("IFCA"). (*See* Dkt. 1; Cutuli Decl., Ex. K). Upon receiving the notice, Admiral promptly responded and informed NWB's counsel that neither Admiral nor McLarens had

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 10

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

"any record of receiving notice that suit had [been] filed." (Cutuli Decl., Ex. L). In response to this e-mail, on September 4, 2024, Plaintiff's counsel provided, for the first time, a copy of the Counterclaim. (Cutuli Decl., Ex. L). Admiral acknowledged the Counterclaim and requested any documentation that it was ever sent to Admiral. (Cutuli Decl., Ex. L). In response, counsel confirmed that NWB "do[es] not have documentation of the counterclaim being sent to Admiral." (Cutuli Decl., Ex. L). The underlying case settled in September of 2024, the same month Admiral first received a copy of the Counterclaim. (Kiess Decl., Ex. B at 92).

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The moving party generally bears the initial procedural burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where, as here, the party moving for summary judgment does not bear the ultimate burden of proof at trial, that party may satisfy its initial summary judgment burden simply "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

### IV.  ARGUMENT

**A.  Plaintiff Cannot Prove a Breach of Contract Because it Never Tendered the Underlying Claims to Admiral**

**1.  Plaintiff's Failure to Tender Precludes its Breach of Contract Claim as a Matter of Law**

"The rule in Washington is clear: An insurer's duty to defend does not arise unless the insured specifically asks the insurer to undertake the defense of the action[.]" *MatcomUSA LP v. Houston Cas. Co.*, No. C19-1952JLR, 2022 WL 2755545, *16 (W.D. Wash. July 14, 2022) (internal quotation marks and brackets omitted). Although the insurer's duty to defend, when triggered, dates back to the filing of the complaint, *Nat'l Sur. Corp. v.*

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 11

*Immunex Corp.*, 176 Wn.2d 872, 889, 297 P.3d 688 (2013), the duty to defend does not become a *legal obligation* that can be breached until tender occurs, *Mutual of Enumclaw v. USF Ins. Co.*, 164 Wn.2d 411, 421, 191 P.3d 866 (2008).  This rule is premised upon the selective tender rule, which recognizes that for a "variety of reasons," an insured might decide not to tender a claim to its insurer and the insurer therefore "cannot be expected to anticipate when or if an insured will make a claim for coverage[.]"  *USF*, 164 Wn.2d at 421.  Thus, an insurer's mere knowledge of a claim against the insured is not sufficient to trigger an insurer's legal obligation to defend the complaint.  *See Unigard v. Leven*, 97 Wn.App. 417, 427, 983 P.2d 1155, 1160 (1999); *Snohomish County v. Allied World Assur. Co.*, 276 F.Supp.3d 1046 (W.D. Wash. 2017) ("The Leven court made it clear that prior cases holding that putting an insurer on notice of claim was sufficient to constitute a tender of defense were disavowed."); *Illinois Nat'l Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, No. 3:20-cv-05374-RAJ, 2021 WL 4476868 at *5 ("Mere notice of a claim is insufficient to establish tender….").  Rather, the insured must "affirmatively inform the insurer that its participation is desired"—that is, "specifically ask[] the insurer to undertake the defense of the action." *Leven*, 97 Wn.App. at 427.

It is undisputed that Plaintiff never did this.  Despite having several opportunities between the date the City formally rejected Plaintiff's explanation for the sinkhole on January 27, 2023 and the mediation, during which time Plaintiff received multiple demands and eventually a Counterclaim from Lane for costs relating to the sinkhole, Plaintiff never provided any of these documents to Admiral, informed Admiral that they existed, or even informed Admiral that the claims were in litigation.  Further, even when it invited Admiral to the mediation, it is undisputed that Plaintiff provided no notice to Admiral that the claim was in litigation and was not, for example, a pre-suit mediation.  Nevertheless, Admiral did everything that was requested of it during this period: it inspected the sinkhole, attended mediation in good faith, and—on at least two occasions—requested additional documents

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

that would provide information regarding the nature of the claims being litigated.  It is undisputed that NWB never requested a defense of the Underlying Action from Admiral did not even provide any of the claims or demands until after it had sued Admiral for bad faith.

Since it is undisputed that Plaintiff did not "specifically ask [Admiral] to undertake the defense of the action," *Leven*, 97 Wn.App. at 427, as Washington law requires, Plaintiff's claim for breach of contract fails as a matter of law.

### 2. Plaintiff's Refusal to Provide Copies of the Pleadings in the Underlying Action Was a Prejudicial Breach of the Policy's Cooperation Clause

Separately, Plaintiff's failure to produce documents necessary for Admiral's investigation constitutes a breach of the policy's conditions precedent to coverage, thereby precluding Plaintiff's claims against Admiral.  "Under Washington law, an insured that breaches a cooperation clause may be contractually barred from bringing suit under the policy." *Torres-Gonzales v. State Farm Fire & Cas. Co.*, No. C14–1393JLR, 2014 WL 5600190, *3 (W.D. Wash. Nov. 3, 2014); *see also Felice v. St. Paul Fire & Marine Ins. Co.*, 42 Wn.App. 352, 358, 711 P.2d 1066 (1985) (holding that a prejudicial breach of the cooperation clause releases the insurer of its obligations under the policy).  To prevail on this affirmative defense, an insurer must show three things:

> (1) the insured failed to "substantially comply" with the terms of the cooperation clause;
> (2) the information at issue was material to the circumstances giving rise to the insurer's liability;
> (3) the insurer suffered actual prejudiced as a result.

*Torres-Gonzales*, 2014 WL 5600190 at *3.  Each of these elements are satisfied here.

#### a. NWB Did Not Substantially Comply with the Cooperation Clause

The undisputed facts demonstrate that NWB cannot claim to have "substantially complied" with the Policy's cooperation clause by failing to provide copies of the Counterclaim or demand letters.  "Substantial compliance" requires the insured to provide

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 13   **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

"sufficient written evidence to enable the insurance company to determine with accuracy the amount of the liability." *Georgian House of Interiors, Inc. v. Glens Falls Ins. Co.*, 21 Wn.2d 470, 495, 151 P.2d 598 (1944).  Here, it is undisputed that Plaintiff did not provide such information.

It is well-settled under Washington law that "the duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014).  Thus, in the context of a third-party liability claim for defense and indemnity coverage, the insured must, at a minimum, provide the insurer with a copy of the underlying pleading setting forth the insured's liability—here, the Counterclaim.  Indeed, as Plaintiff's 30(b)(6) designee acknowledged, the language of the Admiral Policy—which requires the insured to "*[i]mmediately* send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"—is self-executing: that is, the insured must provide those documents whether or not the insurer specifically asks for them.  (Kiess Decl., Ex. B at 59-60).  NWB admits it did not provide these documents.  Thus, NWB failed to substantially comply as a matter of law.

### b. The Counterclaim and Demand Letters Were Material to Admiral's Investigation

Second, given that the obligation of a liability insurer to defend or indemnify depends upon the allegations within the four corners of the complaint against the insured, there is no question that the Counterclaim and demand letters that preceded it were material to Admiral's investigation.  Accordingly, the second element of Admiral's cooperation defense is established as well.

### c. Plaintiff's Failure to Provide the Counterclaim and Demand Letters Prejudiced Admiral's Investigation as a Matter of Law

Finally, Plaintiff's failure to provide the Counterclaim and demands to Admiral until

the eve of settlement and after Plaintiff had already filed suit against Admiral actually and substantially prejudiced Admiral in its investigation of the claim. An insured's delayed compliance with the cooperation clause does not mitigate the prejudice to the insurer. *United Fire Ins. Co. v. Icicle Seafoods, Inc.*, 572 F.Supp.3d 1047, 1064 (W.D. Wash. 2021). And although prejudice is ordinarily a question of fact, courts have found prejudice as a matter of law "[w]here an insurer is unable to complete an investigation of facts due to an insured's failure to provide relevant records[.]" *Icicle Seafoods, Inc.*, 572 F.Supp.3d at 1064.

In *Felice*, the Washington Court of Appeals held that an insured's "six-month delay in notifying the company after the original summons and complaint were served" and the insured ultimately provided a copy only one day before the judgment became final. *Felice*, 42 Wn.App. at 359-60. The Court recognized that prejudice "will be presumed only in extreme cases." *Id*. at 359. The Court nevertheless concluded that the insured's failure to provide a copy of the summons and complaint until so near to the end of the appeal period was one such case, reasoning that the insurer's delay "precluded the opportunity to evaluate the facts and determine whether a trial and expenses for an appeal were warranted." *Id*. at 360.

The same is true here. As in *Felice*, it is undisputed that Admiral was not provided a copy of the Counterclaim until a time when it no longer had an opportunity to evaluate the claim or provide any meaningful coverage. The prejudice to Admiral is readily apparent: had Plaintiff provided Admiral with any of the pre-suit demands that Lane sent to NWB throughout 2023, Admiral could have paid the costs related to the sinkhole and eliminated them from contention in the pending lawsuit. (Cutuli Decl.). Alternatively, had Plaintiff even provided Admiral with a copy of the Counterclaim when Plaintiff received it in September of 2023, Admiral could have, and would have, provided Plaintiff with a defense against it. (Cutuli Decl). If the 6-month delay in *Felice* sufficed to show prejudice as a matter of law, it necessarily follows that Plaintiff's year-long delay in providing the

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 15    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Counterclaim, and nearly two-year delay in providing the pre-suit demands, is equally sufficient to establish prejudice as a matter of law here.

**B.    Plaintiff's Extra-Contractual Claims Fail As a Matter of Law**

**1.    Plaintiff Cannot Identify Any "Unreasonable, Frivolous, or Unfounded" Conduct on the Part of Admiral**

To prevail in a bad faith claim, the insured bears the burden to prove the insurer's conduct was "unreasonable, frivolous or unfounded." *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 560, 951 P.2d 1124 (1998). The determinative question is the "reasonableness of the insurer's action in light of all the facts and circumstances of the case." *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 920, 792 P.2d 520 (1990). "As long as an insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, a claim for bad faith claims handling will not lie against an insurer on the basis of a good faith mistake." *Absher Constr. Co. v. N.Pac. Ins. Co.*, 861 F.Supp.2d 1236, 1254 (W.D. Wash. 2012).

No reasonable jury could conclude that Admiral acted in bad faith by failing to defend a claim that was not tendered to it. The undisputed facts show that Admiral did everything it was asked: it investigated the sinkhole and attended mediation. If Plaintiff wanted defense or indemnity coverage for the sinkhole, it could have simply forwarded any of the numerous demands from Lane or the Counterclaim to Admiral. But Plaintiff chose not to. Admiral requested documentation; but could not ask for what it did not know to exist. Because no reasonable juror could conclude that the failure of Admiral to defend Plaintiff against the Counterclaim was anything other than a good faith mistake, Admiral is entitled to summary judgment as to Plaintiff's common law bad faith claim.

**2.    Plaintiff's IFCA Claim is Meritless Because Admiral Never Denied Coverage**

Plaintiff's IFCA claim fails for the same reasons. A cause of action under IFCA

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 16    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

extends only to an unreasonable denial of coverage or payment of benefits. RCW 48.30.015(1). IFCA does not provide a private right of action for violation of claims handling regulations absent an unreasonable denial of coverage. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 389 P.3d 476 (2017). Here, the undisputed facts show that Admiral did not deny coverage; and any failure of Admiral to provide defense and indemnity coverage was "reasonable" in light of Plaintiff's failure to tender. Accordingly, Plaintiff's IFCA claim should be dismissed.

### 3.    Plaintiff's CPA Claims Should Be Dismissed

Lastly, Plaintiff's Washington Consumer Protection Act claims should be dismissed. In its Complaint, Plaintiff seeks damages under the CPA and asserts violation of various claims handling regulations as a predicate for the "unfair or deceptive act or practice" required by the CPA. *See* RCW 19.86.020. But the facts developed in discovery do not support Plaintiff's alleged claims handling violations. As such, Plaintif's CPA claim should be dismissed with prejudice.

## V.  CONCLUSION

For these reasons, Admiral respectfully requests that its motion be granted and that Plaintiff's claims against Admiral be dismissed with prejudice pursuant to Rule 56 of the Federal Rules of Civil Procedure.

//
//
//
//
//
//
//
//

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

PAGE 17    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

<u>LCR 7(e)(6) Certification</u>

I certify that this document contains 5,253 words, excluding the cover, the table of contents, and table of authorities, and the signature block, and complies with the Local Civil Rules.

DATED:  August 11, 2025

BULLIVANT HOUSER BAILEY PC


By    */s/ Jared F. Kiess*
      Jared F. Kiess, WSBA #54532
      E-mail:  jared.kiess@bullivant.com

Attorneys for Defendant Admiral Insurance Company

4929-8222-7805.1

MOTION FOR SUMMARY JUDGMENT
NO.: 2:24-CV-01310-MJP

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930